UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
Urbana Division

JAMES H.,

    Plaintiff,

v.

NANCY A. BERRYHILL,
Deputy Commissioner for Operations
performing the duties and functions
not reserved to the Commissioner of
Social Security,

    Defendant.

Case No. 17-2074

REPORT AND RECOMMENDATION

Plaintiff James H. seeks review under 42 U.S.C. § 405(g) of the Social Security Administration's denial of his application for disability insurance benefits and supplemental security income. The parties have filed cross motions for summary judgment. For the reasons explained below, the Court recommends that Plaintiff's Motion for Summary Judgment **(#12)** be **DENIED**, Defendant's Motion for Summary Judgment **(#15)** be **GRANTED**, and the decision to deny benefits be affirmed.

I.   Background

On January 25, 2012, Plaintiff filed an application for disability and disability insurance benefits, alleging disability beginning October 1, 1996. Plaintiff's claim was denied initially on March 12, 2012, and upon reconsideration on July 11, 2012. An Administrative Law Judge (ALJ) held a video hearing on October 15, 2013, during which Plaintiff was represented by counsel. The ALJ issued a decision on November 20, 2013, finding Plaintiff not disabled. (R.13-27).

The ALJ found that Plaintiff has the severe impairments of Degenerative Disc Disease of the Lumbar Spine, Degenerative Joint Disease, Mood Disorder with Major Depressive Features, Borderline Intellectual Functioning, Left Carpal Tunnel Syndrome, and Obesity.

(R.15). The ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925, and 416.926). Additionally, the ALJ found that Plaintiff has the residual functional capacity (RFC) to perform light work as defined in 20 CFR 416.967(b) except:

> with occasional stooping, kneeling, crouching, crawling, balancing, reaching overhead with the right arm, and climbing of ramps and stairs but no climbing of ladders, ropes, or scaffolds. He can engage in frequent but not constant manipulations with the right hand. Due to moderate limitations in social functioning and concentration, persistence or pace; the claimant is limited to simple, routine, and repetitive instructions with only brief, superficial interaction with co-workers, supervisors, and the public.

(R.18). The ALJ found that Plaintiff is not capable of performing any of his past relevant work, but found that, considering Plaintiff's age, education, work experience, and residual functional capacity, that jobs exist in a significant number in the national economy that Plaintiff can perform. Plaintiff filed a request for review, which the Appeals Council denied, making the ALJ's ruling the Commissioner's final decision.

## II.   Standard of Review

In reviewing the ALJ's decision, this Court does not try the case *de novo* or replace the ALJ's findings with the Court's own assessment of the evidence. *Pugh v. Bowen*, 870 F.2d 1271, 1274 (7th Cir. 1989). Instead, the Court must affirm the decision to deny benefits if the ALJ correctly applied the law and supported the decision with substantial evidence. *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). The Supreme Court has defined substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Stated differently, if reasonable minds could differ as to whether Plaintiff is disabled, the Court must uphold the ALJ's decision to deny benefits. *Books v. Chater*, 91 F.3d 972, 978 (7th Cir. 1996). Importantly, in order for the Court to evaluate the ALJ's analysis, the ALJ must build a "logical bridge from the evidence to his conclusion." *See Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

## III.   Analysis

Plaintiff's only argument is that the ALJ erred in assessing Plaintiff's credibility in relation to his physical symptoms.[1]

a. **Credibility**

Plaintiff argues that the ALJ improperly assessed Plaintiff's credibility in violation of SSR 96-7p. On March 28, 2016, the agency issued SSR 16-3p, which provided new guidance regarding how a claimant's statements about the intensity, persistence and limiting effects of symptoms are to be evaluated. On October 25, 2017, the Agency republished SSR 16-3p to clarify that the ruling is effective March 27, 2017, and does not apply retroactively. *See* 82 F.R. 49462-63. The Agency stated further that it expects Courts to apply the rules that were in effect at the time the ALJ issued the decision. *Id.* Thus, SSR 96-7p governed the ALJ's subjective symptom analysis.

Pursuant to SSR 96-7p, "[i]n determining the credibility of the individual's statements, the adjudicator must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record."

Moreover, "[t]he determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Id.* However, "[t]his court will not overturn an ALJ's credibility determination unless it is 'patently wrong.'" *Skarbek v. Barnhart*, 390 F. 3d 500, 504-05 (7th Cir. 2004). The Court will affirm the ALJ's credibility finding so long as the ALJ "gives specific reasons that are supported by the record." *Id.* at 505.

---

[1] There was discussion in the record regarding Plaintiff's alleged mental impairments. As Defendant points out, Plaintiff has not raised any arguments regarding the ALJ assessment of Plaintiff's mental impairments and therefore the Court will limit its discussion to the ALJ's assessment of Plaintiff's shoulder and back impairments.

3

Plaintiff devotes eight pages of his motion for summary judgment to recounting medical evidence from the record. Plaintiff's argument section only argues that the ALJ should have reached a different outcome based on Plaintiff's complaints. Plaintiff does not point to any specific evidence that the ALJ ignored or failed to consider. Rather, Plaintiff merely recounts his subjective testimony and argues that the ALJ should have reached a different conclusion. While Plaintiff may not agree with the ALJ's determination, it is not the role of this Court to reweigh conflicting evidence and "so long as reasonable minds may differ, the ALJ's decision will be upheld." *Carradine v. Barnhart*, 360 F.3d 751, 778 (7th Cir. 2004). Put another way, the Court will not reverse the ALJ simply because Plaintiff believes the evidence warranted a different result. Thus, the only task for the Court is to determine whether the ALJ gave specific reasons, supported by evidence in the record, for discounting Plaintiff's subjective testimony. After reviewing the record, it is clear that the ALJ provided well-supported, specific reasons for finding that Plaintiff's statements about his physical impairments were not fully supported by the objective medical evidence.

Plaintiff's argument (and the ALJ's physical symptom analysis) is focused on two impairments: Plaintiff's right shoulder and his back. The Court will address each separately.

### i. Plaintiff's Right Shoulder

The ALJ noted that, on April 14, 2010, Plaintiff underwent a comprehensive internal medicine consultative examination (R.19). During this examination, Plaintiff stated that he had a tumor on his right shoulder and reported taking pain medications. (R.19). Although Plaintiff had "decreased" range of motion in his right shoulder, he had full range of motion in all other joints. *Id.*

On January 11, 2011, Plaintiff presented to Decatur Memorial Hospital with complaints of right wrist and right shoulder pain after falling from a roof. (R.681). As the ALJ pointed out, after examination, Plaintiff had suffered no fractures or dislocations. *Id.* Plaintiff again presented to Decatur Memorial Hospital with complaints of right shoulder pain on January 28, 2011. Plaintiff was diagnosed with a right shoulder impingement and, the same day, underwent right shoulder arthroscopy. (R.739).

Six days after the surgery, Plaintiff returned to Decatur Memorial Hospital on February 3, 2011, with complaints of shoulder pain. The ALJ noted that x-rays were negative on this date. (R.21). Seven days later, on February 10, 2011, Plaintiff presented for his post-surgery follow up. Plaintiff reported at this time that his pain remained the same. However, the physical examination of Plaintiff revealed well healed surgical incisions and mild pain with gentle passive range of motion in flexion and abduction with approximately 30 degrees of movement. (R.705). Plaintiff also had no pain with gentle pendulums. *Id.* Plaintiff was given a prescription for physical therapy. *Id.*

Eighteen days later on February 28, 2011, Plaintiff reported that he was doing well and that his right shoulder pain was settling down. (R.702). At that time, Plaintiff had active forward flexion just below shoulder level, and physical therapy continued. *Id.*

On March 28, 2011, two months after the surgery, Plaintiff continued to report he was doing well. (R.701). At this point, the ALJ noted that Plaintiff's active forward flexion was about 90 degrees and that Plaintiff's shoulder could be fully elevated without much pain. *Id.* It was recommended that Plaintiff continue with physical therapy and that he start "actively moving his shoulder as tolerated." *Id.*

Three months post-surgery, on May 2, 2011, Plaintiff presented with shoulder pain. Plaintiff was given a cortisone injection, but physical examination again revealed active range of motion to about shoulder level and passive range of motion to full forward flex with good internal and external rotation. (R.700).

In June 2011, Plaintiff still reported pain and difficulties with active elevation. Physical examination showed that Plaintiff actively went to 90 degrees of forward flexion and that he could passively elevate his arm with mild rotational tightness and no gross instability. (R.699).

On June 20, 2011, it was reported that Plaintiff called and cancelled his June 2, 2011 therapy appointment and never returned to therapy. (R.718).

In February 2012, Plaintiff presented with subjective complaints of shoulder pain. Plaintiff was diagnosed with a small rotator cuff tear and a re-tear of his labrum. (R.983). Plaintiff and his doctor agreed that, at this time, Plaintiff would focus on his back and follow

up with his shoulder in the future. *Id.* Plaintiff specifically testified that he does not want to redo his shoulder surgery. (R.1338).

As already noted (and as the ALJ recognized), there is support in the record for Plaintiff suffering from recurring shoulder pain. The ALJ expressly recognized that Plaintiff established the nexus required under the regulations and that Plaintiff's impairments could reasonably be expected to produce some of the symptoms alleged. (R.25). However, as outlined above, the ALJ cited several physical examinations and statements by Plaintiff himself that showed Plaintiff's shoulder improved following surgery. While Plaintiff continued to experience pain, the ALJ outlined Plaintiff's post-surgery progress where his range of motion increased and Plaintiff himself reported decreases in pain. (R.699-705).

Moreover, the record shows (and the ALJ appears to have recognized) that Plaintiff's physical therapy was improving Plaintiff's range of motion following his shoulder surgery. Despite this (and despite recommendations from his physicians), Plaintiff unilaterally stopped physical therapy in June 2011 and never returned. These objective factors were all specific pieces of evidence in the record the ALJ used to determine that Plaintiff's symptoms were not as severe as alleged. Because the ALJ articulated his reasons for his assessment, the Court will not reweigh the evidence simply because Plaintiff believes another conclusion should have been reached. *Carradine*, 360 F.3d at 778.

Finally, the Court notes that Plaintiff's shoulder impairment was specifically accounted for in his RFC. The ALJ limited Plaintiff to only occasional reaching overhead with his right arm and stated that Plaintiff could not perform constant manipulations with his right hand. (R.18). In short, the ALJ's credibility determination as it relates to Plaintiff's shoulder is not "patently wrong" and should not be overturned by this Court. *Skarbek*, 390 F. 3d at 504-505.

    ii.    **Plaintiff's Back Pain**

As noted, on April 14, 2010, Plaintiff underwent a comprehensive internal medicine consultative examination (R.19). During this examination, Plaintiff complained of back pain. However, despite chronic back pain, Plaintiff had "5/5 motor strength in the upper and

lower extremities." (R.493). It was further noted that Plaintiff did not need any ambulatory aids at this time. *Id.*

On September 9, 2011, Plaintiff presented with lower back pain. Plaintiff was diagnosed with mild to moderate degenerative changes in the lumbar spine. (R.919)

In October 2011, Plaintiff underwent back surgery. (R.892). As the ALJ pointed out, Plaintiff's back surgeon noted that Plaintiff had an "uneventful post-operative course and that a post-operative CT scan showed excellent placement of his hardware." *Id.* Plaintiff's surgeon also noted that Plaintiff was "up and about" quite a bit. (R.22).

On November 2, 2011, Plaintiff again presented with back pain. Plaintiff's lumbar spine showed post-operative changes, but no evidence of hardware failure or fracture. (R.818).

Plaintiff further presented in April 2012, May 2012, June 2012, December 2012, and May 2013 with complaints of back pain. However, as the ALJ noted, examinations revealed only "moderate" pain with motion. (See R.1033; See also R.1169). Specifically, during the April 2012 appointment, Plaintiff's back pain was described as an "ache" and Plaintiff himself stated that his back pain was relieved by medication. (R.1032). Plaintiff again stated in June 2013 that his back pain was stable and relieved by medications. (R.1180). Plaintiff again reported his back pain as "stable" in December 2012. (R.1173). Despite reporting relief from his pain medications, Plaintiff testified that he no longer uses them. (R.1138). Additionally, the ALJ noted that Plaintiff has not required further back surgery. (R.25).

While the record reflects that Plaintiff walked with a cane, the ALJ noted that the cane was prescribed to Plaintiff at Plaintiff's request and was not voluntarily prescribed by any physician. (R.1338).

Much like Plaintiff's shoulder pain, the ALJ acknowledged the presence of Plaintiff's back pain and further acknowledged that Plaintiff's back problems could reasonably be expected to cause some of his symptoms. (R.25). However, as pointed out above, the ALJ pointed to specific pieces of evidence to show that Plaintiff's pain was not as intense, frequent, or persistent as alleged. The ALJ pointed to medical evidence that showed only isolated, moderate tenderness in Plaintiff's lower back. (R.1627). The ALJ reasonably

7

considered the fact that Plaintiff no longer takes pain medications (R.1371) and the fact that Plaintiff's back surgery was "uneventful." (R.892).

In short, the ALJ has minimally articulated his reasons for finding that Plaintiff's subjective complaints of back pain were not as serve as alleged and has supported those reasons with objective medical evidence. Plaintiff's Motion for Summary Judgment simply rehashes the medical evidence and asks this Court to come to a different conclusion. However, it is not this Court's job to reweigh the medical evidence. The ALJ is in the best position to judge Plaintiff's credibility. Although reasonable minds may differ as to the ALJ's decision, that decision will be upheld if that decision is supported by objective medical evidence, which the ALJ has done in this case. *Carradine*, 360 F.3d at 778 (7th Cir. 2004).

## IV. Conclusion

For these reasons, the Court recommends that Plaintiff's Motion for Summary Judgment **(#12)** be **DENIED**, Defendant's Motion for Summary Judgment **(#15)** be **GRANTED**, and that the decision to deny benefits be affirmed. The parties are advised that any objection to this recommendation must be filed in writing with the clerk within 14 days after being served with a copy of this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1). Failure to object will constitute a waiver of objections on appeal. *Video Views, Inc. v. Studio 21, Ltd.*, 797 F.2d 538, 539 (7th Cir. 1986).

ENTERED this 9th day of August, 2018.

s/ERIC I. LONG
UNITED STATES MAGISTRATE JUDGE